**The PEOPLE of the State of Colorado, ex rel. Duane WOODARD, Attorney General, Complainant–Appellee,**

v.

**James T. BROWN, M.D., Respondent–Appellant.**

**No. 87CA0140.**

Colorado Court of Appeals, Div. I.

Jan. 26, 1989.

Rehearing Denied Feb. 23, 1989.

French & Stone, Joseph C. French, and David M. Haynes, Boulder, for respondent-appellant.

HUME, Judge.

Respondent, James T. Brown, M.D. (Brown), appeals the order entered by the Colorado State Board of Medical Examiners (Board) suspending his license to practice medicine. He asserts that various errors committed by the hearing officer and the Board require reversal of that order. We disagree, and affirm.

## I.

██ Brown contends that the Board's delay in conducting the disciplinary proceedings violated his statutory right to an expeditious hearing and his right to due process of law. However, since these contentions were not raised in the administrative proceedings, and were not addressed by either the hearing officer or the Board, we will not consider them on appeal. *Crocker v. Colorado Department of Revenue*, 652 P.2d 1067 (Colo.1982).

## II.

██ Brown next contends that he was denied due process of law by operation of § 12–36–118(1), § 12–36–118(4)(c)(IV), § 12–36–118(5)(h), C.R.S. (1985 Repl.Vol. 5), and § 24–31–101(1)(a), C.R.S. (1988 Repl. Vol. 10A). We disagree.

Section 12–36–118(1) provides that, for disciplinary proceedings, the Board shall be divided into two panels, each of which is empowered to act as either an inquiry or a hearings panel. If a case is referred to one panel for investigation which results in the filing of formal charges, it must then be referred to the other panel for final hearing and determination of those charges.

Section 12–36–118(4)(c)(IV) provides that if formal disciplinary action is initiated after investigation by the inquiry panel, the matter shall be referred to the attorney general for the preparation and filing of a

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and James J. Humes, Asst. Atty. Gen., Denver, for complainant-appellee.

**1376**

formal complaint. Under § 12–36–118(5)(h), the attorney general is also designated as the prosecutor of charges contained in the formal complaint. In addition, pursuant to § 24–31–101(1)(a), the attorney general is designated as legal counsel and advisor for the Board. Thus, under the provisions of the cited statutes, the attorney general is required to assist the inquiry panel in its investigative function, to serve as prosecutor of charges brought by that panel, and to act as advisor to both the inquiry panel and the hearings panel in its decision-making role.

Due process of law requires an administrative agency to separate its investigative and advocative functions from its decision-making function in any given case. See deKoevend v. Board of Education, 688 P.2d 219 (Colo.1984); Cf. Leonard v. Board of Directors, 673 P.2d 1019 (Colo.App. 1983). That requirement also precludes counsel who performs as an advocate in a given case from advising the decision-making body in the same case. See Weissman v. Board of Education, 190 Colo. 414, 547 P.2d 1267 (1976).

In order to maintain the integrity of administrative disciplinary proceedings, the attorney general has established an internal system designed to separate the regulatory law section from conflicts counsel. This system permits the assignment of counsel from the regulatory law section to represent the Board and the inquiry panel in its investigative and prosecutorial functions, and the use of separate conflicts counsel to act as legal advisor to the hearings panel in its decision-making capacity. We have approved this method of avoiding an impropriety or the appearance thereof and maintaining the integrity of the administrative process in Horwitz v. State Board of Medical Examiners, 716 P.2d 131 (Colo. App.1985), and in Ranum v. Colorado Real Estate Commission, 713 P.2d 418 (Colo.App.1985).

Here, Brown does not claim that the same section of the attorney general's office served as both prosecutor and decision-

al advisor in his case. Rather, he contends that since the regulatory section serves both panels, either successively or simultaneously, the hearings panel in Brown's case would also be represented by the regulatory section of the attorney general's office when that panel serves as the inquiry panel for another case. He contends that the relationship between the attorney general and the Board in the overall conduct of disciplinary proceedings so undermines the appearance of the Board's impartiality that it requires reversal of the order entered by the hearings panel in his case. We are not persuaded.

The actions of an administrative agency are entitled to presumptions of regularity, validity, and constitutionality. See deKoevend v. Board of Education, supra; Leonard v. Board of Directors, supra. The existence of a relationship which suggests only a remote and tenuous possibility of unfairness is not sufficient to overcome those presumptions. See Cordova v. Mansheim, 725 P.2d 1158 (Colo.App.1986). See also Osborn v. District Court, 619 P.2d 41 (Colo.1980) (applying substantial relationship test in context of criminal prosecutions).

Here, Brown has not asserted any facts which suggest that any relationship between the attorney general's office and the hearings panel deprived him of a fair and impartial hearing. There has been no showing that the regulatory law section's participation before the hearings panel when it acts as an investigating body in totally unrelated transactions created any unfairness in Brown's proceedings.

The essence of due process is basic fairness. See deKoevend v. Board of Education, supra. Since the presumptions of regularity, validity, and constitutionality have not been overcome, and no unfairness has been demonstrated, we conclude that Brown was not deprived of due process of law.

## III.

Brown also contends that the hearing officer and the Board erred in ad-

mitting opinion testimony from expert witnesses concerning standards of practice for family physicians and Brown's deviation therefrom. We disagree.

The determination of the qualifications of a witness to testify as an expert is a matter committed to the discretion of the fact-finding tribunal, and, in the absence of an abuse of discretion, such determination will not be disturbed on appeal. *Baird v. Power Rental Equipment, Inc.*, 191 Colo. 319, 552 P.2d 494 (1976).

In this case, the hearing officer made detailed written findings of fact and conclusions of law concerning the qualifications of each proffered expert witness. Careful consideration was given to the evidence of each witness' basis of familiarity with the standards relating to family practitioners in the Loveland community at or about the time of the incident charged in the disciplinary complaint. Those findings are supported by substantial evidence in the record, and the conclusions of law are in accord with established legal principles. *See Durkee v. Oliver*, 714 P.2d 1330 (Colo. App.1986) (time and substance of expert knowledge); *Connelly v. Kortz*, 689 P.2d 728 (Colo.App.1984) (actual engagement in specialty or field in question not a requirement); *Martin v. Bralliar*, 36 Colo.App. 254, 540 P.2d 1118 (1975) (personal practice in same or similar locale not required).

We are satisfied that no abuse of discretion has been shown in the admission of the expert testimony or in the consideration such testimony was accorded by either the hearing officer or the Board.

### IV.

Brown contends that the Board's application of 1979 amendatory legislation to conduct that occurred prior to its effective date violated the provisions of § 12–36–131(2), C.R.S. (1985 Repl.Vol. 5), and the prohibition against retrospective legislation provided by Colo. Const. art. II, § 11. We disagree.

Prior to its amendment in 1979, the Colorado statute defining "unprofessional conduct" included two subsections dealing with substandard medical care provided by physicians. One subsection provided that "grossly negligent malpractice" was a form of unprofessional conduct. *See* Colo. Sess.Laws 1967, ch. 374, § 91–1–17(1)(m) at 813 (later codified as § 12–36–117(1)(*l*) prior to 1979). The other subsection included "a pattern of medical practice which fails to meet generally accepted standards of medical care, which pattern includes frequent occurrences of such substandard medical care." *See* Colo.Sess.Laws 1975, ch. 124, § 12–36–117(1)(p) at 461.

Effective July 1, 1979, § 12–36–117(1)(*l*) was repealed and § 12–36–117(1)(p) was amended to read as follows:

> "An act or omission constituting grossly negligent medical practice or two or more acts or omissions which fail to meet generally accepted standards of medical practice." Section 12–36–117(1)(p), C.R.S. (1985 Repl.Vol. 5); *see* Colo.Sess. Laws 1979, ch. 108, at 512.

At the same time, § 12–36–131, C.R.S., was amended by the addition of the following subsection:

> "(2) Nothing in this article shall be construed to invalidate the license of any person holding a valid, unrevoked, and unsuspended license on June 30, 1979 ... or to affect any disciplinary proceeding or appeal pending on June 30, 1979...." Section 12–36–131(2), C.R.S. (1985 Repl. Vol. 5); *see* Colo.Sess.Laws 1979, ch. 108, at 522.

In this case, formal disciplinary proceedings were initiated against Brown by the filing of a complaint in March 1984. As subsequently amended, that complaint contained four counts, each of which alleged that Brown's failure properly to diagnose and treat a particular patient's medical condition constituted unprofessional conduct which warranted discipline.

Specifically, the complaint charged that Brown failed properly to diagnose and treat a case of gastro-intestinal bleeding in 1980, an ectopic pregnancy in February

1979, a heart condition in 1978, and a chronic pulmonary condition complicated by pneumonia in 1980. Each count alleged that Brown's conduct in providing medical care to each patient was grossly negligent, and alternatively, that such conduct, when combined with the conduct described in the other counts, constituted two or more acts or omissions which failed to meet generally accepted standards of medical practice.

The Board found that Brown provided substandard care to the patient who was suffering from gastro-intestinal bleeding by his failure to admit that patient to the intensive care unit before leaving the hospital during the early morning hours of February 29, 1980. The Board also found that while the care Brown provided to that patient did not meet generally accepted standards of medical practice, his acts or omissions were not grossly negligent. However, the Board concluded that, when Brown's actions in the 1980 case were considered together with his earlier acts of providing grossly negligent care to the ectopic pregnancy patient in February 1979, and to the heart patient in 1978, Brown had committed two or more acts or omissions which failed to meet generally accepted standards of medical practice under the provisions of § 12–36–117(1)(p), C.R.S. (1985 Repl.Vol. 5).

Brown's contention that § 12–36–131(2) precludes application of the amendment to his pre-amendment conduct is without merit. The statute defined grossly negligent medical practice as unprofessional conduct both before and after the 1979 amendment. Both versions of the statute also recognized multiple acts of rendering substandard care as unprofessional conduct, albeit in slightly different terms. Thus, Brown's license was not invalidated solely by application of the amendment to his pre-amendment conduct.

Under Brown's interpretation, the effect of the amendment would be to confer immunity for acts of unprofessional conduct which occurred prior to its passage. We agree with the Board's conclusion that such an interpretation is not in the public interest and was not intended by the general assembly.

 Moreover, the disciplinary proceedings against Brown were not pending on June 30, 1979, and thus, that portion of § 12–36–131(2) which precludes application of the amendment to then pending proceedings is inapplicable here. Hence, we conclude that § 12–36–131(2) was not violated in this case.

Colo. Const. art. II, § 11, was construed by the Colorado Supreme Court in *Continental Title Co. v. District Court*, 645 P.2d 1310 (Colo.1982). There, the court held that the application of a statute is not necessarily rendered unconstitutionally retroactive simply because the facts upon which it operates occurred before the statute's adoption. Rather, the critical test to be applied is whether the statute in question takes away or impairs a vested right acquired under previously existing laws, creates a new obligation, imposes a new duty, or attaches a new disability with respect to transactions already past.

As noted above, no new obligation, duty, or disability was created and no vested right was impaired or taken by application of the amendment to Brown's pre-amendment conduct. Grossly negligent medical practice was proscribed by statute both before and after the 1979 amendment. Similarly, under both versions of the statute, substandard acts or omissions could be cumulated to constitute unprofessional conduct.

Accordingly, the Board did not err in its construction and application of the amended statute in this case. *See Zaragoza v. Director of Department of Revenue*, 702 P.2d 274 (Colo.1985) (conviction for driving under the influence that occurred before statutory amendment concerning revocation of driver's license could be used a predicate for revocation after a post-amendment conviction).

## V.

 Brown next asserts that the Board's findings that he engaged in acts or

omissions which constituted substandard care and grossly negligent medical practice are not supported by sufficient evidence. We disagree.

This argument is premised, in part, on Brown's argument, rejected in Part III above, that the Board erred in considering opinion testimony given by unqualified expert witnesses. He also contends that the Board's ultimate findings and conclusions are not supported by substantial evidence in the record as a whole.

Brown does not challenge the standards of medical practice applied nor the evidentiary findings entered by the hearing officer. Rather, his sole contention is that the Board erred in applying the evidentiary facts to the applicable legal standards to arrive at its ultimate findings that he had engaged in grossly negligent medical practice in treating two of his patients, and that he had engaged in acts of substandard medical practice in treating the other two patients as alleged in the complaint. We reject that contention.

Our review of the record satisfies us that both the hearing officer and the Board properly understood and applied the applicable standards to the evidentiary facts. Conflicting expert testimony was considered, weighed, and evaluated to determine the existence of community professional standards and the extent to which the evidence demonstrated that those standards were identical to or differed from state and national standards. Expert testimony was also evaluated to determine the extent to which Brown's treatment choices, though differing from those followed by other skilled family practitioners, were, nevertheless, supported by a significant quantum of medical opinion. In such instances his treatment choices were determined to be within the applicable standard of care, despite significant expert opinion to the contrary.

The record contains substantial evidence supporting the ultimate findings that Brown's acts and omissions in treating the ectopic pregnancy and the heart patient constituted an extreme departure from the ordinary standard of care provided in the community at the time in question, and were so deviant from the accepted minimal standard as to be beyond the bounds of professional tolerance. The findings that Brown's acts and omissions in treating the gastro-intestinal bleeding condition and the pulmonary patient were, respectively, substandard and minimally substandard are also supported by substantial evidence in the record.

Accordingly, since the findings of ultimate fact are supported by substantial evidence and have a reasonable basis in law, we find no abuse of the Board's discretion warranting reversal. *See deKoevend v. Board of Education, supra.*

### VI.

Brown complains that the three-year suspension imposed by the Board was so unduly harsh and oppressive as to manifest an abuse of discretion. We disagree.

An agency is afforded wide discretion in its determination of an appropriate sanction for unprofessional conduct, and a licensing restriction should be upheld unless it bears no relation to the conduct, is a gross abuse of discretion, or is manifestly excessive in relation to the needs of the public. *Hickam v. Colorado Real Estate Commission,* 36 Colo.App. 76, 534 P.2d 1220 (1975).

Here, the agency considered the gravity of Brown's substandard conduct and its potential and actual consequences, his prior record of professional conduct, and his response to previously attempted corrective measures. It also considered Brown's age, the age of the case, the lack of additional acts of misconduct during its pendency, and the safety and welfare of the public. Brown has not shown that the agency abused its discretion in imposing the three-year suspension followed by a probationary period upon his reinstatement, and thus, the sanction should not be disturbed.

The order is affirmed, and the stay of execution previously entered is vacated.

PIERCE and MARQUEZ, JJ., concur.