**COLORADO STATE BOARD
OF DENTAL EXAMINERS,**
Complainant–Appellee,

v.

Gregory E. MICHELI, D.D.S.,
Respondent–Appellant.

No. 95CA1452.

Colorado Court of Appeals,
Div. I.

Oct. 24, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor Gener-

al, Susan Machmer, Assistant Attorney General, Denver, for Complainant–Appellee.

Kennedy & Christopher, P.C., Daniel R. Christopher, John R. Mann, Denver, for Respondent–Appellant.

Opinion by Judge METZGER.

Respondent, Gregory E. Micheli, D.D.S., appeals an order of the State Board of Dental Examiners (Board) affirming an initial decision of the Administrative Law Judge (ALJ) which placed his license to practice dentistry on probation for one year. We reverse and remand for further proceedings.

In May 1993, respondent was charged with several violations of the Dental Practice Law, § 12–35–101, et seq., C.R.S. (1991 Repl.Vol. 5A). The charges involved respondent's care and treatment of several patients and included allegations that he had failed to treat them in accordance with generally accepted standards of dental practice.

Following an evidentiary hearing, the ALJ made extensive and detailed findings of fact and determined that only a small number of the allegations of substandard practice had been proven. The ALJ recommended that respondent's license be placed on probation for one year with conditions to be set by the Board.

Counsel for the Board and respondent filed exceptions to this decision. The Board later rejected these exceptions, accepted the findings of fact and conclusions of law as determined by the ALJ, and set the terms of respondent's probation. This appeal followed.

I.

■ Respondent contends that the Board erred in concluding that recordkeeping omissions regarding the care and treatment given to one of his patients constituted substandard practice subject to discipline under § 12–35–118(1)(j), C.R.S. (1991 Repl.Vol. 5A). We disagree.

Section 12–35–118(1), C.R.S. (1996 Cum. Supp.) sets forth a detailed list of causes which may trigger disciplinary action against any person licensed to practice dentistry. As pertinent here, § 12–35–118(1)(j) provides that such action may be taken with regard to: "An act or omission constituting grossly negligent dental or dental hygiene practice or which fails to meet generally accepted standards of dental or dental hygiene practice."

The Board's conclusion was premised on the ALJ's evidentiary findings that, contrary to the applicable standard of care, respondent had failed to record both medications he had given to a patient before the extraction of her teeth and telephone calls he had made to her post-operatively.

Acknowledging the factual accuracy of these findings, the respondent contends nonetheless that they are insufficient as a matter of law to support the Board's conclusion that he engaged in substandard dental practice under § 12–35–118(1)(j). His argument is based on § 12–35–118(1)(y), C.R.S. (1991 Repl.Vol. 5A), which authorizes disciplinary action against a licensee for: "Falsifying or repeatedly making incorrect essential entries or repeatedly failing to make essential entries on patient records."

Respondent relies on the principle of statutory construction that specific provisions control over those which are more general, see generally § 2–4–205, C.R.S. (1980 Repl.Vol. 1B). He argues that findings that he had violated § 12–35–118(1)(y), were essential to support a conclusion that his conduct constituted substandard dental practice under § 12–35–118(1)(j). For several reasons, we reject this argument.

First, respondent's argument is inconsistent with the plain meaning of § 12–35–118(1)(y).

■ Legislative words and phrases should be given effect according to their plain and ordinary meaning, *People v. District Court,* 713 P.2d 918 (Colo.1986), and a forced, subtle, or strained construction should be avoided if the language is simple and its meaning is clear. *Harding v. Industrial Commission,* 183 Colo. 52, 515 P.2d 95 (1973).

Here, there is no indication in § 12–35–118(1)(y) that the General Assembly intended that provision to encompass "any and all" recordkeeping errors and omissions. To the contrary, the General Assembly has qualified

the phrase "entries on patient records" with a number of common terms, including "repeatedly" and "essential." As relevant here, the term "essential" means "having or consisting of the basic, most fundamental nature, property, quality, or attribute peculiar to or necessary or indispensable to its kind"; the term "repeatedly" means "recurring again and again." *Webster's Third New International Dictionary*, 777, 1924 (1986). Applying the common meanings of these words here, we conclude that § 12–35–118(1)(y) is intended to address a pattern of recordkeeping in which over and over again the licensee makes incorrect critical entries or regularly omits essential entries.

Second, respondent's proposed interpretation would, in essence, usurp the authority of the Board to determine whether particular conduct involving recordkeeping falls below the applicable standard of dental care. This, we conclude, is inconsistent with the overall legislative scheme of the Dental Practice Law which establishes the Board as a body with authority to regulate the practice of dentistry and with expertise to decide issues involving standards of care. *See* §§ 12–35–104 and 12–35–107, C.R.S. (1991 Repl.Vol. 5A); *see also State Board of Medical Examiners v. McCroskey*, 880 P.2d 1188 (Colo. 1994) (discussing the policy reasons for recognizing the Medical Board's discretion in determining the standard of care).

Finally, respondent's construction is not necessary in order to harmonize §§ 12–35–118(1)(j) and 12–35–118(1)(y), which should be construed together and reconciled if possible. *Estate of David v. Snelson*, 776 P.2d 813 (Colo.1989).

Recordkeeping conduct that is significant in terms of a patient's care and treatment, and which is not characterized by falsity or repetitiveness, can be addressed under § 12–35–118(1)(j). On the other hand, recordkeeping that is characterized by falsity or by a repetitiveness can be properly addressed under § 12–35–118(1)(y).

There was no attempt here to characterize respondent's recordkeeping as the conduct contemplated by § 12–35–118(1)(y). Rather, expert testimony established the existence of omissions, described as significant in terms

of patient care. The Board's conclusion that these omissions constituted a violation of § 12–35–118(1)(j) is "the result of an appropriate application of a legal standard to the particular facts before it." *Lee v. State Board of Dental Examiners*, 654 P.2d 839, 844 (Colo.1982). Thus, we will not disturb it on review.

## II.

■ Next, respondent asserts that the Board erred in concluding that, because he failed to obtain adequate informed consent from one of his patients, he was subject to discipline under § 12–35–118(1)(j). He argues that the findings concerning the standard of care for informed consent and his failure to meet that standard were not supported by competent evidence and thus, pursuant to § 24–4–106(7), C.R.S. (1988 Repl. Vol. 10A), should be set aside. Again, we disagree.

We reject respondent's assertion that the determination of applicable standard of care is unsupported by the record. While respondent properly argues that expert testimony is required to establish a standard of professional conduct, *Boigegrain v. Gilbert*, 784 P.2d 849 (Colo.App.1989), the record contains sufficient testimony on that issue.

Respondent's additional challenge to the competency of the evidence that established his failure to meet this standard is, likewise, not supported by the record. The patient testified specifically, and without objection, that she was given no explanation and no option before her tooth was extracted. Although this testimony conflicted squarely with respondent's, it is the role of the ALJ, not of the Board or of this court on review, to resolve the conflicts in the evidence. *Charnes v. Lobato*, 743 P.2d 27 (Colo.1987).

Under these circumstances, we reject respondent's challenge to the evidentiary findings which formed the basis of the Board's ultimate conclusion of inadequate informed consent. The findings are supported by substantial, albeit conflicting, evidence when the record is considered as a whole. *See Lee v. State Board of Dental Examiners, supra.*

### III.

Respondent argues that the Board erred in concluding that he had received adequate notice of a charge that one of his assistants failed to wear gloves while performing a procedure. We agree.

On this issue, the ALJ specifically found: [T]here was convincing evidence that on one occasion [respondent's] assistant was ungloved while handling a dental impression tray inside the patient's mouth. Because the failure to wear gloves at the time this patient was being treated constituted substandard practice and because [respondent] is responsible for the work of his dental assistants, [respondent's] failure to assure that his assistant wore gloves on this occasion constituted substandard practice on his part. . . .

Due process requires that administrative procedures which threaten to deprive a respondent of a significant property interest must be fundamentally fair. Thus, a respondent must have an opportunity to be heard following adequate notice of the nature of the proceedings. *Norton v. Colorado State Board of Medical Examiners*, 821 P.2d 897 (Colo.App.1991). This due process standard is defined for purposes of administrative agency action in § 24-4-105(2)(a), C.R.S. (1996 Cum.Supp.), which provides: "Any person entitled to notice of a hearing shall be given timely notice of the time, place, and nature thereof, the legal authority and jurisdiction under which it is to be held, and the matters of fact and law asserted." *See also Colorado State Board of Medical Examiners v. Boyle,* 924 P.2d 1113 (Colo.App.1996).

We conclude that this standard has not been met here. The amended Notice of Charges filed in November 1993 provided that: "[R]espondent was non-sterile at times he performed dental procedures on patient. . . ." In January 1994, the Assistant Attorney General in charge of the case responded to respondent's attorney's request for more specific information regarding this allegation: "[I]f Dr. Micheli failed to wear gloves he was non-sterile."

The first indication in the record that the charge was based on the conduct of the assistant and not on that of the respondent was during the patient's testimony at the hearing before the ALJ. Respondent's attorney objected on the basis of inadequate notice, but the ALJ overruled the objection.

In our view, these facts do not meet the test of adequate notice. Although, contrary to respondent's assertions, the letter to his attorney from the Assistant Attorney General adequately apprised him of the type of conduct being alleged—*i.e.,* not wearing gloves—it made no mention that the alleged actor was respondent's assistant. Indeed, it specifically stated that the actor was respondent, an allegation not only wholly unsubstantiated by the testimony at the hearing but also completely at variance with that testimony.

Accordingly, this charge must be dismissed. *See Colorado State Board of Nursing v. Lang,* 842 P.2d 1383 (Colo.App.1992).

### IV.

Finally, respondent contends that the discipline imposed by the Board was disproportionate to the violations actually proved. Because we have concluded that one of the bases for discipline cannot stand, we need not address this assertion.

The order of the Board placing respondent's license on probation for one year is reversed, and the cause is remanded for further proceedings to reconsider the appropriate disciplinary sanction for respondent's violations of the Dental Practice Law that were properly found to have occurred.

HUME and ROY, JJ., concur.