25CA1966 Cubbon v ICAO 03-19-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1966
Industrial Claim Appeals Office of the State of Colorado
DD No. 787-2025

---

Kathleen T. Cubbon,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado,

Respondent.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE MOULTRIE
Dunn and Harris, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 19, 2026

---

Kathleen T. Cubbon, Pro Se

No Appearance for Respondent

¶ 1     Kathleen T. Cubbon appeals the denial of her claim for unemployment benefits.  We affirm.

## I.     Background

¶ 2     Cubbon worked as an event coordinator for Dave and Buster's Management Corporation, LLC (Employer) until it terminated her employment.  Shortly thereafter, a deputy for the Division of Unemployment Insurance (Division) granted Cubbon's claim for unemployment benefits.  Employer appealed that decision, and the Division scheduled the matter for an evidentiary hearing regarding the reasons for Cubbon's job termination.

¶ 3     Cubbon didn't attend the hearing.  Employer's representative, General Manager Michelle Hughes, attended and testified on Employer's behalf.  Employer called no other witnesses but tendered multiple written statements authored by employees purportedly familiar with Cubbon's use of a racial slur in the workplace, including one by Cubbon herself.  The hearing officer admitted these statements into evidence.

¶ 4     Upon reviewing the evidence, the hearing officer found that Employer "discharged [Cubbon] because [she] used a racial slur in the office."  In using the slur, the hearing officer found, Cubbon

1

violated Employer's "professional expectation policy." Thus, the hearing officer determined, Cubbon was disqualified from receiving unemployment benefits under section 8-73-108(5)(e)(XX), C.R.S. 2025 (disqualifying claimants terminated for failure to meet "established job performance or other defined standards").

¶ 5 Cubbon submitted an untimely appeal to the Industrial Claim Appeals Office (the Panel) and also requested a new hearing. The Panel issued an order finding that good cause existed to allow Cubbon's untimely appeal to proceed; however, it found that no good cause supported her request for a new hearing. Cubbon then submitted briefing to the Panel, which issued an order affirming the hearing officer's decision. While the Panel agreed with the hearing officer that Cubbon was disqualified under section 8-73-108(5)(e)(XX), it determined that disqualification was also appropriate under section 8-73-108(5)(e)(XIV) (disqualifying claimants terminated for rudeness, insolence, or offensive behavior). Applying an objective standard, the Panel determined that a reasonable person under the same circumstances would find Cubbon's verbalization of the racial slur offensive and would not

countenance it, even if, as Cubbon argued, she was only repeating what someone else said.

## II. Standard of Review

¶ 6    We may not disturb factual findings "supported by substantial evidence" and may only set aside the Panel's decision if (1) the Panel acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the factual findings don't support its decision; or (4) the decision is erroneous as a matter of law. § 8-74-107(4), (6), C.R.S. 2025.  Substantial evidence is that which is "probative, credible, and competent, [and] of a character [that] would warrant a reasonable belief in the existence of facts supporting a particular finding, without regard to the existence of contradictory testimony or contrary inferences." *Rathburn v. Indus. Comm'n*, 566 P.2d 372, 373 (Colo. App. 1977).

¶ 7    An individual is disqualified from receiving unemployment benefits if the separation from employment occurred based on the "[r]udeness, insolence, or offensive behavior of the worker not reasonably to be countenanced by a customer, supervisor, or fellow worker." § 8-73-108(5)(e)(XIV).  An objective standard applies in determining whether a claimant has engaged in such disqualifying

3

behavior. *Davis v. Indus. Claim Appeals Off.*, 903 P.2d 1243, 1244 (Colo. App. 1995). We review de novo ultimate conclusions of fact and ultimate legal conclusions, including whether certain behavior is objectively "not reasonably to be countenanced" under section 8-73-108(5)(e)(XIV). *Harbert v. Indus. Claim Appeals Off.*, 2012 COA 23, ¶¶ 8-9; *see Federico v. Brannan Sand & Gravel Co.*, 788 P.2d 1268, 1272 (Colo. 1990) (Ultimate conclusions of fact are "conclusions of law or mixed questions of law and fact that are based on evidentiary facts" and are generally "phrased in the language of the controlling statute or legal standard.").

## III.   Discussion

¶ 8   As a threshold matter, because we find no reversible error in connection with the Panel's ruling under section 8-73-108(5)(e)(XIV), as explained below, we don't consider Cubbon's arguments related to the Panel's ruling under section 8-73-108(5)(e)(XX).[1]  *See* § 8-73-108(5)(e) (a claimant is disqualified

---

[1] This includes her arguments that Employer (1) failed to produce copies of the policy, the employee handbook, and employee training materials it relied on to terminate her; (2) submitted false evidence about Cubbon's employee training and the events underlying her termination; and (3) failed to follow its escalating discipline policy.

from receiving benefits where any one of the enumerated provisions is met).

### A. No Reversible Error as to Factual Findings and Legal Conclusions

¶ 9 Contrary to Cubbon's argument, substantial evidence supports the hearing officer's finding that she said a racial slur — specifically, the N-word — at work. Indeed, Cubbon's own written statement, admitted as evidence, supports this finding.

¶ 10 To the extent that Cubbon argues that her written statement was hearsay, we reject that argument. *See* CRE 801(d)(2) (nonhearsay includes a party's own statement offered against them). It's undisputed that Cubbon authored the statement. She was therefore familiar with its contents before the hearing. Moreover, no other evidence contradicts her statement, and Cubbon's briefing to this court implicitly acknowledges she said the racial slur at work. We therefore perceive no reversible error in the hearing officer's finding that Cubbon said the racial slur at work.

¶ 11 Cubbon doesn't contest that Employer fired her for saying the racial slur at work, and substantial evidence supports that finding as well. At the hearing, Hughes testified that she terminated

Cubbon for behaving "inappropriate[ly]" and "disrespectful[ly]" when she used the racial slur at work.

¶ 12 Moreover, though Cubbon argues that the context in which she said the racial slur mitigated the circumstances, we agree with the Panel's conclusion that vocalizing the racial slur at work constituted objectively offensive conduct "not reasonably to be countenanced by a customer, supervisor, or fellow worker," even considering the context here. § 8-73-108(5)(e)(XIV).

### B. No Procedural Errors Merit Setting Aside the Order

¶ 13 Cubbon further contends that multiple procedural errors require setting aside the order. We consider, and reject, each contention in turn.

#### 1. Request for New Hearing

¶ 14 Cubbon argues that the Panel's decision to deny her request for a new hearing violated her due process rights and 42 U.S.C. § 503. Specifically, we discern that she argues that the Panel impermissibly denied her the opportunity for a fair hearing. *See* 42 U.S.C. § 503 (requiring a fair hearing where the state denies unemployment benefits); *Mountain States Tel. & Tel. Co. v. Dep't of Lab. & Emp.*, 520 P.2d 586, 588 (Colo. 1974) (due process entitles

litigants to advance notice and an opportunity to be heard before state action resulting in deprivation of a significant property interest).

¶ 15 As required, the Panel evaluated Cubbon's request for a new hearing through the lens of Division of Unemployment Insurance Regulation 11.2.13.2, 7 Code Colo. Regs. 1101-2. In doing so, the Panel necessarily considered whether Cubbon received an opportunity for a fair hearing and found that she had. We discern no error.

¶ 16 Regulation 11.2.13.2 required that the Panel receive Cubbon's written request for a new hearing within twenty calendar days of the date the hearing officer mailed the decision. *Id.* That regulation also required Cubbon to provide a statement showing good cause for missing the initial hearing. *Id.* Because Cubbon filed her request for a new hearing fifty-seven days late, the Panel additionally considered whether she demonstrated good cause for the late filing. *Id.*

¶ 17 In determining whether a claimant has shown good cause, the Panel considers (1) "whether the party acted in the manner that a reasonably prudent individual would have acted under the same or

7

similar circumstances"; (2) whether the Division committed an "administrative error"; (3) whether the claimant "exercised control over the untimely action"; (4) the length of delay in filing; (5) whether the delay prejudiced "any other interested party"; and (6) "whether denying good cause would lead to a result that is inconsistent with the law." *Id.* at Reg. 12.1.8. The Panel need not make findings as to every foregoing factor. *Id.* at Reg. 12.1.8.8.

¶ 18 Here, the Panel found that good cause excused her late filing but not her failure to appear for the initial hearing. As a result, the Panel allowed Cubbon to proceed with an appeal of the hearing officer's decision but denied her request for a new hearing. Substantial evidence supports the Panel's finding that accessing the hearing was within Cubbon's control, and that she acted unreasonably by failing to do so.

¶ 19 The record reflects that the hearing notice, which included instructions for participating in the hearing, was mailed to the parties approximately two weeks before the hearing was held. The instructions contained the web address and docket number required to check in for the hearing, information regarding when parties needed to check in, an admonition that a nonappealing

party's failure to check in could result in the hearing proceeding without that party, and an admonition that a claimant could be required to repay benefits.

¶ 20     Cubbon argued that she "was not able to access the hearing" and was "denied access" but provided no details regarding her attempts to access the hearing or the specific trouble she encountered.  From Cubbon's statement that she had trouble following the "given instructions" to access the hearing, the Panel reasonably inferred that Cubbon timely received the hearing notice. Without more information from Cubbon, the Panel concluded that she had the capacity to access the hearing but failed to do so because she failed to follow the instructions.  It further found that the Division made no administrative errors contributing to her failure to attend the hearing.  The above-mentioned evidence that Cubbon timely received instructions from the Division supports this finding.

¶ 21     In sum, the Panel found that the Division provided Cubbon an opportunity for a fair hearing, but she didn't take advantage of it. Due process and 42 U.S.C. § 503 only require that a party be given an opportunity to be heard; neither mandates that a party in fact be

heard if she chooses not to take advantage of the opportunity. *See* 42 U.S.C. § 503; *Norton v. Colo. State Bd. of Med. Exam'rs*, 821 P.2d 897, 901-02 (Colo. App. 1991).

¶ 22 In any event, we note that none of the evidence that Cubbon suggests she would present in a hearing would affect the disposition under section 8-73-108(5)(e)(XIV). Cubbon suggests she would testify regarding the circumstances and personnel involved when a manager used the slur and when she reported and thereby repeated it. However, as noted above, the Panel concluded that verbalizing the slur in the workplace was objectively offensive, regardless of whether Cubbon was just repeating what she heard someone else say. Again, we agree with this conclusion, so no additional evidence regarding context or intent would affect the disposition.

## 2. Additional Issues

¶ 23 Cubbon also argues that the hearing notice was impermissibly vague because it failed to advise that the hearing officer's resolution of the issues could result in Cubbon's liability for an overpayment of benefits. We reject this argument for two reasons. First, the hearing notice clearly says that a claimant "may have to repay

benefits received if, as a result of [the appeal hearing], the previous award of benefits is reversed." Second, even if the hearing notice had not clearly advised Cubbon of the potential for repayment, because she sought benefits under the Colorado Employment Security Act, the law presumes her familiarity with its provisions. *Paul v. Indus. Comm'n*, 632 P.2d 638, 639 (Colo. App. 1981). Section 8-74-109(2), C.R.S. 2025, expressly requires the Division to recover benefits a claimant received "to which [s]he is subsequently determined to be not entitled as a result of a final decision in the appeals process."

¶ 24 Cubbon also argues that the hearing officer erred in admitting evidence that Cubbon had not been provided before the hearing. Cubbon contends that she received no documents before the hearing, including the written statements she and various coworkers authored. Assuming that Cubbon didn't receive these documents before the hearing, we see no harm in the hearing officer's admitting them into evidence. As discussed above, Cubbon's written statement alone supports the hearing officer's finding that she said the racial slur at work. It's undisputed that Cubbon was familiar with the contents of her own written

11

statement before the hearing. Thus, we disregard any error in the hearing officer's admitting it into evidence. *See* C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties.").

## IV. Disposition

¶ 25    We affirm the Panel's order.

JUDGE DUNN and JUDGE HARRIS concur.