[Civ. No. 15764. Second Dist., Div. One. Nov. 3, 1947.]

EUGENE J. RINALDO, Respondent, v. BOARD OF
MEDICAL EXAMINERS et al., Appellants.

Fred N. Howser, Attorney General, and J. Albert Hutchinson, Deputy Attorney General, for Appellants.

Culbert L. Olson and John W. Olson for Respondent.

DORAN, J.—The peremptory writ of mandate issued by the superior court, directed the appellant, Board of Medical Examiners, hereinafter called the board, to grant the respondent Eugene J. Rinaldo, "a full and fair hearing upon his petition (for reinstatement of license) presented to the defendant Board on August 13, 1945, and to enter a decision thereon after such full and fair hearing thereof."

Respondent's petition for the writ of mandate sets forth that on June 12, 1922, Rinaldo, alleged to be a "practicing physician and surgeon in good standing in the State of Missouri," applied to the board for a reciprocal license to practice such profession in California, which license was granted September 6, 1922; that on April 28, 1924, respondent was "charged by said board with having procured said reciprocity certificate by fraud and misrepresentation, in that he falsely stated in his application that he was the possessor of a medical diploma from the St. Louis College of Physicians and Surgeons dated and issued in the year 1908, and that he had fulfilled all the preliminary education required." Said license was thereafter revoked, but in 93 Cal.App. 72 [268 P. 1076] the revocation was annulled on the ground that the board was without jurisdiction to make the order for the reason that "all the evidence introduced . . . was hearsay."

The petition further recites that on October 18, 1932, the board again charged respondent with having procured the license by false representations; that acting upon the depositions of three witnesses the board again revoked the license, although the respondent was not present at the hearing. Respondent now claims that this evidence was forged and perjured, and seeks a new hearing. Following the second revocation, the respondent sought the aid of the superior court by way of certiorari and secured an annulment thereof on the ground of insufficiency of evidence, which decision was, however, reversed on March 19, 1935, in 5 Cal.App.2d 345, 352 [42 P.2d 724] where the appellate court said: "A review of the evidence . . . shows that the board had sufficient com-

petent evidence before it to warrant the exercise of its power to revoke respondent's license. Its decision and order is therefore final and conclusive, and it was error for the trial court to annul the order of revocation.'' Respondent's petition to have the cause heard in the Supreme Court was denied.

The controversy between Mr. Rinaldo and the board reached the appellate court for the sixth time in 1936, and in 15 Cal. App.2d 585, 594 [59 P.2d 868] this court refused to sanction amendment of respondent's original petition for certiorari which had been before the court in 5 Cal.App.2d 345 [42 P.2d 724]; holding that ''On the unqualified reversal of the judgment herein (5 Cal.App.2d 345), and the receipt by the lower court of the remittitur from this court, everything of a factual nature was before the former court which was either necessary or proper for its consideration.'' A hearing before the Supreme Court was again denied.

On August 13, 1945, more than 12 years after the license had been revoked, respondent presented to the board an application for reinstatement of the license to practice medicine in California, and, according to the petition for mandamus, ''then and there offered to prove that the finding of the Board upon which plaintiff's license had been revoked was based upon said perjured testimony and forged documentary evidence presented to said Board.'' The board denied this application and refused to consider the offer of proof because, as stated in respondent's petition, section 2376.5 of the Business and Professions Code relating to reinstatement, could not be invoked ''for the reason that it was the earlier determination of the Board that plaintiff's certificate was issued on improper information resulting from fraudulent misrepresentation, and . . . such procedure (under Sec. 2376.5) is designed only to secure the reinstatement of a license properly issued and thereafter revoked upon showing of reformation justifying such reinstatement''; that Rinaldo's license was not properly issued and therefore never valid.

Following this action respondent secured the peremptory writ of mandate directing the board to grant ''a full and fair hearing upon his petition for reinstatement,'' from which judgment the board now appeals. In this connection the board contends that ''The issues herein are res judicata adverse to respondent,'' and that ''the principles of res judicata apply to administrative fact finding.'' It is also claimed that ''A void, fraudulently induced certificate (permitting

respondent to practice medicine) cannot be reinstated.'' Appellant also argues that ''The petition does not state a cause of action'' and ''contains statements which preclude relief,'' showing ''respondent's failure to exhaust his administrative remedy.''

The respondent's brief avers that ''One would naturally reason that an administrative board would not hesitate to accord an applicant, whose professional license it has revoked as having been fraudulently obtained, an opportunity to prove in a full and fair hearing that its order of revocation was induced by and based upon perjured depositions and forged documents,'' but that ''this appeal emphasizes a determination of the Appellant Board to deny Respondent such a hearing if it is legally possible to do so.''

■ The contention that ''Opportunity has never been given Respondent to have a fair hearing before the Board,'' presents what is perhaps the basic controversy on this appeal, as it is, in fact, on most if not all proceedings for review. As hereinbefore mentioned, the respondent Rinaldo was not present when the revocation of license was ordered although it appears that due notice of the hearing had been given. In view of this notice the board claims that due opportunity was thus accorded the respondent to present proof in respect to the present claim of perjured evidence; that not having done so, respondent's ''refusal or failure to appear or present evidence thus precludes judicial relief.'' The respondent's brief answers this as follows: ''It is not enough to say that Respondent had notice of the Board's meeting in Sacramento on October 18, 1932, when it revoked his license. On that same day he was in court in Los Angeles in connection with the hearing of a case between Respondent and Appellants'' concerning a writ of prohibition.

In the case of *Dare* v. *Board of Medical Examiners,* 21 Cal. 2d 790, 799 [136 P.2d 304], occurs the following statement of a rule of judicial review, clearly applicable to the present controversy. The court there said: ''There is nothing in any of the cases to justify the conclusion that one charged with violating the conditions of his professional license may remain silent before the board or present a so-called 'skeleton' showing and thereafter secure in court a trial *de novo* in an unlimited sense.'' And in *Tennant* v. *Civil Service Commission,* 77 Cal.App.2d 489 [175 P.2d 568], involving mandamus proceedings to compel the commission to accord a discharged employee a full and fair hearing, it was held that the employee

could not then assert certain objections to evidence which had not been raised at the hearing. This proposition is, indeed, fundamental.

The respondent's attempted explanation of absence at the Sacramento hearing of October 18, 1932 (a conflict in dates between that hearing and a court hearing in Los Angeles), neither improves nor alters the legal situation here presented. It is a matter of general knowledge that a conflict in hearing dates is not uncommon. Such a conflict, however, can hardly excuse an interested party from taking whatever steps may be necessary for the protection of alleged rights. It cannot be supposed that Rinaldo was ignorant of the serious nature of the charges preferred; even then the matter had been before the courts several times. As early as 1924, respondent had been charged with "having procured said reciprocity certificate by fraud," and the license revoked, which revocation was later set aside in 93 Cal.App. 72 [268 P. 1076] on the ground that it was based on hearsay evidence. Notice of the later hearing on similar charges was given to respondent, and the present claim, presented many years later, that respondent was not accorded a "full and fair hearing," is without merit.

▮ Section 2376.5 of the Business and Professions Code, under which respondent's petition for reinstatement was made, reads in part as follows: "A person whose certificate has been revoked or suspended for more than one year, may petition the board to reinstate the certificate after a period of not less than one year has elapsed from the date of the revocation or suspension. . . . The petition shall be accompanied by two or more verified recommendations from physicians and surgeons licensed by the board . . . and by two or more recommendations from citizens having personal knowledge of the activities of the petitioners since the disciplinary penalty was imposed. . . . In determining whether the disciplinary penalty should be set aside and the terms and conditions, if any, . . . the board may investigate and consider all activities of the petitioner since the disciplinary action was taken against him, the offense for which he was disciplined, his activity during the time his certificate was in good standing, and his general reputation for truth, professional ability and good character."

It is impossible to read the above statute without concluding that what the legislators had in mind was the reinstate-

ment of a license which in the first instance had been duly and properly granted to a physician from another state; and which later, because of some professional misconduct, had been revoked or suspended. This, for example, is evident from the statutory references to rehabilitation, such as the requiring of character recommendations and evidence of petitioner's activities since revocation of the license;—provisions obviously inapplicable to the revocation of a license obtained by fraud.

■ Section 14 of the act in effect prior to 1937 and operative at the time respondent's license was revoked, provided that "whenever a certificate shall have been procured by fraud or misrepresentation . . . it shall be the duty of the Board and the Board shall have power to . . . revoke his certificate." These words can evidence nothing less than a legislative intent that in such cases the board shall, by its order, effect a complete and final eradication of a license which has illegally come into apparent being by reason of the applicant's fraud. To believe otherwise is to entertain the absurd proposition that although it is the "duty of the Board" to revoke a license fraudulently obtained, nevertheless, by some magic not clearly understood, an applicant can later become rehabilitated and cause the license to be reinstated. As said in appellant's brief, "the provisions of the Code authorizing reinstatement of licentiates, whose former licenses had been revoked for misconduct after the lawful receipt of such licenses, was not intended and cannot be construed as a grant of power to the Board to conduct proceedings for a retrial of the merits of the revocation proceedings."

■ The sum and substance of the respondent's claim is, in effect, that all the various hearings and decisions therein, before the board and before the courts, both trial and appellate, shall, insofar as the same are unfavorable, be disregarded, and the entire controversy again opened up and continued *ad infinitum*. Such cannot be and is not the law.

In place of pursuing the rational procedure, and presenting the claim of forged and perjured evidence at the hearing in the revocation proceedings, respondent waited some 12 years and then, by way of a reinstatement petition, sought a rehearing of the entire matter. In the meantime, as appellants point out, and this is not denied by respondent, all witnesses to respondent's alleged fraud "have either died or removed to places unknown," and are consequently unavailable. Under all the circumstances disclosed by the record,

and particularly in view of the opportunity afforded to present the present claims to the board at the hearing of October 18, 1932, it cannot be deemed that the respondent has suffered any injury which is now subject to judicial correction.

The judgment is therefore reversed and the peremptory writ of mandate discharged.

York, P. J., and White, J., concurred.