No. 22581.

BILLY LACEY *v.* THE PEOPLE OF THE STATE OF COLORADO.
(442 P.2d 402)

Decided June 17, 1968.     Rehearing denied July 15, 1968.

4. WITNESSES — *Forgery* — *Prior Felony Conviction* — *Attack on
   Credibility* — *Propriety* — *Statute.* In prosecution for forgery,
   where district attorney in bringing out defendant's prior
   foreign conviction was *not* attempting to show common scheme,
   device or plan, but was doing so in an effort to attack defen-
   dant's credibility as a witness, *held,* such action on district
   attorney's part was valid and is permitted by C.R.S. 1963,
   154-1-1.

EDWARD H. SHERMAN, Public Defender in and for the

City and County of Denver, DAVID G. MANTER, Assistant, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, ROBERT C. MILLER, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

LACEY was convicted by a jury of the crime of forgery (C.R.S. 1963, 40-6-1) and as a result thereof he was thereafter sentenced to a term of from ten to fourteen years in the state penitentiary. This particular sentence, incidentally, was to be served concurrently with a sentence imposed upon him in a companion case wherein he had previously pled guilty to the crime of forgery and had theretofore been sentenced to imprisonment in the state penitentiary for a term of from five to fourteen years. By writ of error Lacey now seeks reversal of the conviction which resulted in the ten to fourteen year sentence to the penitentiary.

The People's evidence showed that Lacey purchased a used car from one John H. Knight for $175. Upon consummation of the transaction Lacey took possession of the vehicle and the certificate of title thereto, and in return therefor gave Knight a check in the amount of $175.

Upon trial Knight positively identified Lacey as the individual to whom he sold his car. However, according to Knight the man with whom he thus dealt did not use the name of Lacey, but on the contrary held himself out to be one "C.F. Croswell." And the check which was given by Lacey to Knight in payment for the vehicle was signed "C.F. Croswell." In other words, Knight was the designated payee on the check, and "C.F. Croswell" was the purported maker thereof. The check was drawn on

the Mountain States Bank and was on a form which carried the printed name "C.F. Croswell" at the top.

Upon trial Lacey testified that it was somebody else, not he, who had purchased the car in question from Knight, and that he (Lacey) had never even seen Knight till trial of the matter. As to the question of identity, as indicated above, Knight definitely identified Lacey as the person with whom he had dealt. In this identification, Knight was corroborated by two other witnesses. Knight had previously left his car at a service station with the direction that it be offered for sale. And the service station attendant identified Lacey as the one who made inquiry of him about the car, and the attendant testified that he in turn then referred him to Knight. Also, a girl friend of Lacey's testified upon rebuttal that she recalled "driving around" with Lacey in a " '55 Dodge," which was the year and make of car which Knight had sold.

■ Lacey now contends that Knight's testimony is "incredible" and the conviction should therefore be reversed. Whether Knight and the two corroborating witnesses should be believed, or on the other hand whether Lacey's testimony regarding mistaken identity should have been accepted, was an issue to be resolved by the jury. And by their verdict the jury has now indicated, in effect, that it was Lacey's testimony — not Knight's — which was in fact "incredible." This determination is one which we are not at liberty to set aside.

■ Lacey also argues, alternatively, that even if it be assumed that it was he who in fact bought the car from Knight, still the People failed to show that there was a "lack of authority" on his part to sign the name of "C.F. Croswell." "Lack of authority" may be proven by circumstantial evidence, as well as by direct evidence. Without going into elaborate detail, the instant case in this regard comes well within our recent pronouncement in *Avila v. People*, 163 Colo. 525, 431 P.2d 782.

■ Error is next assigned to the ruling by the trial

court wherein it admitted into evidence the signature card of the true "C.F. Croswell" on file with the bank. For some reason "C.F. Croswell" did not appear as a witness upon the trial. Whether he was available, or not, the record does not disclose. Regardless, a bank officer did testify and it is his testimony which formed the basis for the eventual admission into evidence of the aforementioned signature card. The bank representative testified that he was personally acquainted with Mr. Croswell and had on many occasions witnessed the making of his signature. Based on the fact that he was very familiar with Croswell's signature, he then opined that the signature on the check under consideration was not Croswell's and that the signature on the signature card was that of Croswell. He then explained the manner in which the signature cards were obtained and kept by the bank and added that he was the bank official "in charge" of all signature cards. This, to us, is a sufficient foundation to justify the reception into evidence of the signature card here under attack, and accordingly we perceive no error in this regard.

The real issue raised by this writ of error concerns the use of prior felony convictions by the district attorney in his effort to attack the credibility of Lacey. As above noted, Lacey elected to testify and upon cross-examination the district attorney propounded a series of questions relating to Lacey's prior convictions. In response to a leading question, Lacey admitted that in 1965 he was convicted of forgery and that in 1956 he also suffered another conviction for forgery. Then he was asked if he had not also been convicted of "criminal assault of a minor child" in 1948. To this question objection was voiced, the specific objection being that "this is not going to scheme or anything else — I don't think this type of offense has anything to do with it." This objection was overruled and Lacey then stated that he had entered a plea of "non vult" to the assault charge

and that as a result of the "non vult" plea he "did time in the state pen."

▮ The objection as voiced was without merit, as the district attorney in bringing out Lacey's prior felony conviction was *not* attempting to show common scheme, device or plan, but was doing so in an effort to attack Lacey's credibility as a witness in the case, as is permitted by C.R.S. 1963, 154-1-1.

However, in the motion for new trial, as well as in this court, Lacey expands upon this point. Here, it is agreed that the 1948 "conviction" for criminal assault occurred in New Jersey and resulted from Lacey's entry of a plea of non vult contendere. Also, it is agreed by counsel that so-called "criminal assault" in New Jersey is a misdemeanor, New Jersey apparently no longer recognizing the distinction between felonies and misdemeanors. However, in this regard it is also agreed that though it may be classified as a misdemeanor, the particular crime to which Lacey entered a plea of non vult contendere under New Jersey statutes permitted the imposition of a sentence to the state penitentiary and that Lacey was in fact incarcerated for about one and one-half years in the state penitentiary as a result of his non vult contendere plea. In view of what we deem to be the rather serious and fundamental nature of this phase of the controversy, we elect to dispose of the matter on its merits and as it has been argued to us, rather than on the narrow ground that the particular objection made upon trial was without merit.

▮ At the outset it is to be noted that we are not here concerned with the wisdom of a statute which permits showing the conviction of a person for *any* felony for the limited purpose of affecting the credibility of that person when he testifies as a witness in a criminal proceeding. The General Assembly has resolved the matter. Hence, whether a prior conviction for *any* felony does in logic and fact detract from the credibility of such a convicted person when he subsequently (per-

haps years later) takes the witness stand, and whether a jury does in fact limit its use of such testimony to the witness' credibility and whether, if not, its use is an injustice, are, as stated by Judge Learned Hand, "not open questions for us." *Pfortzer v. Aqua Systems*, 162 F.2d 779.

■ By way of initial comment, a conviction in a sister state or in a Federal court may be shown for the purpose of affecting the credibility of a witness, unless the statute authorizing the use of such evidence precludes a so-called "foreign conviction." 58 Am. Jur. p. 402. Our statute contains no such limiting language, and therefore Lacey's New Jersey "conviction" may be shown providing it otherwise meets the statutory requirements.

■ Although there is authority to the contrary (Massachusetts, for example) the general rule is that inasmuch as a conviction on a plea of guilty may be shown as affecting credibility, a conviction on a plea of nolo contendere, or non vult contendere as it is sometimes referred to, may also be shown as affecting credibility. 58 Am. Jur. 397-398 and 146 A.L.R. 867-870. And this is true even though a plea of nolo contendere, or non vult contendere has been uniformly held to be an implied confession of guilt and equivalent to a plea of guilty *only* for the purposes of the criminal proceeding. The weight of authority is that where the issue is merely whether one has been *convicted* of a crime, a conviction based on a plea of nolo contendere may be shown as affecting such person's credibility. And the courts so holding have at the same time recognized that one who has theretofore entered a plea of nolo contendere is not bound thereby in a collateral civil proceeding for the same wrong and is not estopped to deny his guilt. In other words, following sentence a person is *convicted* upon either a plea of guilty or a plea of nolo contendere, even though there admittedly are differences in general purpose of each of these two pleas.

In support of the foregoing see *Kravis v. Hock,* 136 N.J.L. 161, 54 A.2d 778. See also *State v. Henson,* 66 N.J.L. 601, 50 A. 468 where it was held that it was proper to ask the defendant upon cross-examination in a homicide case whether he had previously pleaded non vult contendere to an indictment for petit larceny. Hence, in New Jersey a conviction based on a plea of non vult contendere is a conviction which may be shown as affecting the credibility of such person when he appears as a witness in a case.

Typical of cases from other jurisdictions holding that where the fact that a witness has been convicted of a crime may be shown as affecting his credibility, it is immaterial that the conviction was based upon a plea of nolo contendere are *Haley v. Brady,* 17 Wash. 2d 775, 137 P.2d 505; *State v. Herlihy,* 102 Me. 310, 66 A. 643, and *State v. Vanasse,* 42 R.I. 278, 107 A. 85.

■ Our attention has not been directed to any Colorado authority bearing directly on this point. We are not unmindful of *People ex rel v. Edison,* 100 Colo. 574, 69 P.2d 246, but the matter at issue there is not the precise issue which we are now called upon to resolve. We elect to follow what we deem to be not only the majority rule, but the rule which we feel is the better one, namely, that a conviction based on a plea of nolo contendere is within the meaning of that word as it is used in C.R.S. 1963, 154-1-1.

Finally, there remains the question as to whether Lacey was convicted of a felony, inasmuch as our statute now limits evidence of this nature to felony convictions. It appears that Lacey was convicted in New Jersey of that which New Jersey classifies as a high misdemeanor. We are advised that there is no such thing as a felony in New Jersey, and that crimes in that state are classified as either misdemeanors, or high misdemeanors. In our view this "labeling" or "classifying" of crimes by New Jersey is not the important thing. We are here interpreting a Colorado statute and in connection there-

with reference should be made to Amendment XVIII, section 4 of the Colorado constitution, which provides that wherever the term "felony" is used in a statute it is to be construed as meaning any criminal offense punishable by death or imprisonment in the penitentiary. See also *Smalley v. People*, 134 Colo. 360, 304 P.2d 902.

Accordingly, we hold that the word "felony" as used in our statute includes any crime in a sister state which carries with it as a possible penalty, incarceration in the state penitentiary. In the instant case, the crime to which Lacey pleaded non vult contendere is punishable by a fine of not more than $3,000, or by imprisonment for not more than twelve years, or both. And Lacey upon his conviction was in fact sentenced to a term in the state penitentiary and actually served time therein. Under these circumstances, the trial court did not err in permitting Lacey to be cross-examined as to his 1948 New Jersey conviction.

The judgment is affirmed.

MR. JUSTICE PRINGLE and MR. JUSTICE HODGES concur.