COLORADO STATE BOARD OF
MEDICAL EXAMINERS,
Appellee,

v.

Cornelius D. BOYLE, Respondent–
Appellant.

No. 95CA0507.

Colorado Court of Appeals,
Div. V.

Feb. 22, 1996.

Rehearing Denied April 11, 1996.

Certiorari Denied Oct. 15, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Robert N. Spencer, Assistant Attorney General, Denver, for Appellee.

Hochstadt, Straw & Strauss, P.C., Richard S. Strauss, Denver, for Respondent–Appellant.

Opinion by Judge KAPELKE.

Respondent, Cornelius D. Boyle, appeals from a final order of the Colorado State Board of Medical Examiners (the Board) revoking his license to practice medicine. We affirm.

Respondent, an ophthalmologist, obtained a license to practice medicine in Colorado in 1986. His license remained active until May 31, 1991, when it lapsed for nonpayment of the biannual license renewal fee.

In 1991, while practicing in Kentucky, respondent was convicted of wanton first degree assault, a felony, and sentenced to imprisonment for a maximum term of ten years.

Upon learning of respondent's conviction, the Board initiated disciplinary proceedings under the Medical Practice Act (MPA), § 12–36–118, C.R.S. (1991 Repl.Vol. 5B). On June 6, 1994, the formal complaint of the attorney general, a notice and citation, and a notice to set were hand delivered to respondent at the county jail in Kentucky.

On June 20, a certified public accountant who was also an officer of the Boyle Eye Clinic, a Kentucky corporation, notified the attorney general by letter that respondent requested that no action be taken against his medical license until he had an opportunity to defend himself. Attached to this letter was another letter, apparently signed by the accountant on respondent's behalf, claiming that respondent had not been properly served, disputing all allegations in the formal complaint, and requesting that no hearing be held until respondent was released from incarceration.

Pursuant to a motion by the attorney general, the Administrative Law Judge (ALJ) issued an order determining that the letter was not an answer to the formal complaint. This order was mailed to respondent at the county jail on July 7 and remailed to him on July 21 at the correctional facility in Kentucky to which he had been relocated.

On July 24, the Division of Administrative Hearings setting clerk phoned respondent at the correctional facility and set a hearing for September 28 and 29. A notice of the hearing was mailed to respondent at the correctional facility on July 25.

Respondent did not file an answer to the formal complaint. The accountant, however, filed a purported answer, a "response," and a motion to continue.

The ALJ held a hearing on September 28. Respondent, still incarcerated, did not participate personally or through counsel. The accountant was present and moved to continue the hearing and to intervene. The ALJ denied both motions. At the Board's request, the accountant and the setting clerk testified briefly as to their having been able to communicate with the respondent by telephone. Documentary evidence was introduced at the hearing regarding respondent's indictment and conviction, his appeal, and pertinent Kentucky law.

The ALJ concluded that the Board had jurisdiction over the respondent and his license to practice medicine and that respondent was in violation of § 12–36–117(1)(f), C.R.S. (1991 Repl.Vol. 5B), which defines unprofessional conduct as "[c]onviction of a felony," thereby subjecting respondent to Board discipline pursuant to § 12–36–118(5)(g)(III), C.R.S. (1991 Repl.Vol. 5B). Noting that respondent could reapply for licensure upon his release from prison, the ALJ recommended revocation of respondent's license.

Pursuant to the Administrative Procedure Act (APA), § 24–4–105(14)(a)(II), C.R.S. (1995 Cum.Supp.), respondent sought review by the Board. The Board considered the initial decision and respondent's exceptions pursuant to § 24–4–105(15), C.R.S. (1995 Cum.Supp.). Following review, the Board issued a final order adopting the ALJ's findings of fact and conclusions of law, rejecting respondent's exceptions, and revoking respondent's license to practice medicine in Colorado. Thereafter, respondent filed this appeal.

I.

A.

Respondent first argues that the Board erred in finding that it had subject matter jurisdiction. The crux of his argument is

that, under § 12–36–123(3), C.R.S. (1991 Repl.Vol. 5B) (deleted by amendment, effective July 1, 1995), the Board lacked authority to act on a lapsed license. We disagree.

Section 12–36–123, C.R.S. (1991 Repl.Vol. 5B) grants the Board general authority to establish and monitor the procedural aspects of new, active, and lapsed medical licenses. As relevant here, the statute specifies that nonpayment of registration fees prescribed by the Board results in the lapse of a license, reinstatement of which may be subject to conditions set by the Board. At the times pertinent here, § 12–36–123(3) provided:

> Upon application made to the board by any such licensee ... his license shall be reinstated ... If,*before or after such application for reinstatement has been made,* charges are preferred against the licensee by the board or by any person, as provided by section 12–36–118, the board shall defer action on the pending application for reinstatement, *if any,* and proceed with a hearing on such charges in accordance with section 12–36–118 and thereupon shall reinstate, further suspend,or revoke such license. (emphasis added)

Although respondent concedes that § 12–36–123 authorizes the Board to place conditions on a lapsed license, he argues that under § 12–36–123(3) the Board has authority to proceed with a hearing on charges against a "lapsed" licensee only after the licensee has applied for reinstatement of the license. Therefore, respondent argues, because he has not sought reinstatement, the Board lacked jurisdiction to revoke his lapsed license.

Respondent's analysis ignores the General Assembly's inclusion of the phrases "before or after" and "if any" with reference to such applications. These phrases indicate an intent that the Board have jurisdiction to act with respect to a lapsed license both before and after filing of an application for reinstatement. Accordingly, we conclude that § 12–36–123(3) is susceptible of more than one interpretation.

 The court's primary task in this situation is to ascertain and give effect to the intent of the General Assembly. *People v.*

*District Court,* 713 P.2d 918 (Colo.1986). If, as here, the statute is part of a comprehensive legislative program, we must, in ascertaining legislative intent, consider the balance of the enactments relating to the same subject matter. *Danielson v. Castle Meadows, Inc.,* 791 P.2d 1106 (Colo.1990).

 Here, two provisions of the MPA are instructive in determining legislative intent. Section 12–36–102, C.R.S. (1991 Repl.Vol. 5B) declares that the purpose of the MPA is to regulate and control the practice of medicine in order to protect the public against unauthorized, unqualified, and improper practice of the healing arts. This declaration has been construed as authorizing the Board to act in the public interest even in the absence of injury or actual harmful effect on a medical practice. *Colorado State Board of Medical Examiners v. Hoffner,* 832 P.2d 1062 (Colo.App.1992). Indeed, as stated in *Dixon v. State Board of Optometric Examiners,* 39 Colo.App. 200, 204, 565 P.2d 960, 963 (1977):

> If the concept of licensing practitioners dealing with public health is to have any vitality and purpose beyond providing a certificate suitable for framing, it is unreasonable to require proof of injury to a patient before approving revocation of a license.

Additionally, § 12–36–118 expressly grants the Board authority to initiate investigations and disciplinary actions against any physician licensed or authorized to practice medicine in the state, not only in response to written complaints but also "on its own motion." Section 12–36–118(4)(a), C.R.S. (1991 Repl. Vol. 5B).

These statutory provisions, when read in conjunction with the Board's general authority under § 12–36–123 to establish and monitor new, active, and lapsed licenses, leads us to conclude that respondent's interpretation of § 12–36–123(3) is contrary to that intended by the General Assembly.

We thus conclude that § 12–36–123(3) authorized the Board to prefer charges against a physician whose license had lapsed and that such authority was not dependent upon the prior filing of an application for reinstate-

ment. Accordingly, the Board did not err in concluding that it had jurisdiction.

### B.

■ Alternatively, respondent contends that the Board lacked personal jurisdiction. The thrust of his argument is that he had insufficient "minimum contacts" with the state of Colorado to support jurisdiction by the Board. Again, we disagree.

By applying for and obtaining a license to practice medicine in this state, a physician consents and submits to the jurisdiction of the Board with respect to proceedings concerning such license. Further, obtaining a license to practice medicine is a sufficient contract with the state to satisfy due process requirements. Hence, if respondent was properly served, he was subject to the Board's personal jurisdiction. *See United Bank v. Buchanan,* 836 P.2d 473 (Colo.App. 1992).

Here, the record reveals that respondent was personally served in accordance with § 12–36–118(5)(b), C.R.S. (1991 Repl.Vol. 5B). Thus, the Board had jurisdiction over respondent and could proceed with respect to his lapsed license.

### II.

Respondent next contends that the Board erred in concluding that the hearing before the ALJ met statutory and constitutional requirements. We disagree.

### A.

First, respondent argues that notice of the September hearing failed to apprise him of the nature and purpose of the hearing and of his rights.

■ Due process requires that a respondent be notified of the nature of the proceedings and apprised of the right to present evidence in his or her own behalf. *Norton v. Colorado State Board of Medical Examiners,* 821 P.2d 897 (Colo.App.1991). This due process standard is defined for purposes of administrative agency action in § 24–4–105(2)(a), C.R.S. (1995 Cum.Supp.) which provides:

Any person entitled to notice of a hearing shall be given timely notice of the time, place, and nature thereof, the legal authority and jurisdiction under which it is to be held, and the matters of fact and law asserted.

■ The record reveals that these criteria were met here. Consistent with § 12–36–118(5), C.R.S. (1991 Repl.Vol. 5B), respondent received by June 6 a notice and citation and a notice to set with a copy of the formal complaint. These documents informed respondent that he had been charged with unprofessional conduct on several grounds including conviction of a felony and that a hearing would be held before an ALJ to determine whether he had, as alleged in the complaint, engaged in unprofessional conduct and whether his license to practice should be revoked or suspended, or whether he should be otherwise disciplined. The documents contained citations to the applicable provisions of the MPA and the APA, as well as the text of the relevant MPA provisions. By these documents, respondent was also apprised of his obligation to file an answer within twenty days and of his rights to appear in person with legal counsel, to cross-examine witnesses, and to present evidence in his own behalf.

Considered along with the notice respondent received following the telephone setting, these documents timely and adequately apprised respondent of the nature and purpose of the hearing and of his rights in regard to that hearing.

### B.

Respondent further contends that the state violated his right to be heard and meaningfully participate in the hearing. We disagree.

The Board did not violate any statutory rights of respondent in proceeding with the hearing despite his incarceration outside the state. Section 12–36–118(5)(c), C.R.S. (1991 Repl.Vol. 5B) provides that it is the duty of the physician charged to file an answer to a formal complaint with the Board. Further, § 12–36–118(5)(d), C.R.S. (1991 Repl.Vol. 5B) provides that the Board may proceed to hear

the complaint if the physician fails to answer or appear at the hearing. Moreover, inasmuch as § 12–36–118(5)(e), C.R.S. (1991 Repl.Vol. 5B) states only that "the physician *may* be present in person, and by counsel if he so desires," the statute does not require that a physician be present at the hearing. *See Norton v. Colorado State Board of Medical Examiners, supra.*

Accordingly, in light of this statutory scheme, the dispositive issue becomes whether respondent was denied his due process right to an opportunity to be heard "at a meaningful time and in a meaningful manner." *See In re Marriage of Finer,* 893 P.2d 1381 (Colo.App.1995). We conclude that respondent's due process rights were not violated.

In *Norton v. Colorado State Board of Medical Examiners, supra,* a panel of this court considered whether a physician's right to an opportunity to be heard was violated by an ALJ's order prohibiting the physician from testifying at his disciplinary hearing because of discovery violations. In determining that the physician, by declining to comply with discovery orders, had deliberately chosen not to exercise his opportunity to be heard, the court concluded:

> [D]ue process requires only that the respondent have an *opportunity* to be heard. It does not mandate that the respondent, in fact, *be* heard if he or she does not choose to take advantage of this opportunity.

*Norton v. Colorado State Board of Medical Examiners, supra,* 821 P.2d at 901–902 (emphasis in original).

Courts in other jurisdictions have proceeded under a similar analysis in circumstances involving a physician's absence from a license revocation hearing. In *Laverne v. Sobol,* 149 A.D.2d 758, 539 N.Y.S.2d 556 (1989), the court ruled that when a physician had been notified of the disciplinary hearing and had been afforded an opportunity to be heard, his right to due process was not violated even though physical and emotional incapacities precluded his attendance at his disciplinary hearing. *See also Reed v. Ohio State Medical Board,* 40 Ohio App.3d 124, 532 N.E.2d 189 (Ohio App.1988) (because the physician

had received proper notice of the hearing informing him of the reasons for the medical board's proposed action and of his right to request and appear in person or with an attorney at the hearing, his absence did not deprive him of due process or a fair hearing); and *Rinaldo v. Board of Medical Examiners,* 82 Cal.App.2d 213, 186 P.2d 26 (1947) (notice alone was sufficient to protect physician's rights where physician could have taken steps to protect his rights). *But see State v. Davis,* 143 Fla. 236, 196 So. 491 (1940) (when statute contemplates the accused shall have the right to appear at the hearing, physician's constitutional rights infringed when incarceration left him powerless to attend the proposed hearing). *See generally* Annot., 10 A.L.R.5th 111–117 (1993).

■ We conclude that, under the analysis set forth in *Norton v. Colorado State Board of Medical Examiners, supra,* when, as here, a respondent's absence from the disciplinary hearing results from incarceration in a foreign jurisdiction, that respondent's right to due process is not violated if opportunity was afforded to participate in the hearing at a meaningful time and in a meaningful manner. We conclude that respondent had such an opportunity here.

■ In early June, respondent was put on notice that he had a duty to respond to the complaint. In July, many months before the hearing, the ALJ informed respondent that his initial letter of June 20 would not be considered as an answer to the formal complaint or as a motion for a continuance, and that he would be given thirty days to respond. Additionally, respondent was apprised that either he or an attorney entering an appearance on his behalf must sign all pleadings and that, if an attorney not licensed in Colorado were to enter an appearance, such attorney would have to move for special admission pursuant to C.R.C.P. 221.1. Despite these several notices, respondent failed to exercise his opportunities to be heard.

Respondent could have submitted his position in writing, either with or without the assistance of counsel; he could also have been represented by counsel at the hearing

and could have requested the opportunity to participate in the hearing by telephone. He did not avail himself of any of these opportunities.

Accordingly, we hold that respondent was not denied the opportunity to be heard at a meaningful time and in a meaningful manner.

■ Respondent also argues that the hearing lacked "basic fairness" because the ALJ failed to accept the several pleadings filed by the accountant or allow the accountant to represent respondent at the hearing. We reject this argument.

It was undisputed that the accountant was not an attorney. Thus, he could neither submit pleadings nor present arguments before the ALJ. *See People v. LaPorte Church of Christ,* 830 P.2d 1150 (Colo.App.1992).

Moreover, we reject respondent's argument that the accountant, as an officer of the Boyle Eye Clinic, should have been recognized as respondent's agent and permitted to participate on his behalf. The clinic was not a party before the Board.

■ In addition, respondent argues that it was fundamentally unfair for the ALJ to deny the accountant standing, but then to compel him to testify without advice of counsel. We disagree.

Section 24–4–105(9), C.R.S. (1995 Cum. Supp.) provides that any party compelled to testify shall be entitled to the benefit of legal counsel. However, a review of the record reveals that the essence of the accountant's testimony was that he had been able to communicate with respondent despite respondent's incarceration. Since the testimony of the administrative clerk had also established this fact, we conclude that the accountant's testimony was merely cumulative. Hence, any error by the ALJ in requiring the accountant to testify was harmless under the circumstances here.

Therefore, we conclude that the proceedings before the ALJ did not violate respondent's statutory rights under the MPA or his due process rights.

### III.

Finally, respondent contends that the Board erred in concluding that there was evidence to support a conclusion that he had been convicted of a felony in violation of § 12–36–117(1)(f). The essence of respondent's argument is that the offense for which he was convicted in Kentucky is not a felony in Colorado. We disagree.

■ Under Colo. Const. art. XVIII, § 4, any crime in a foreign jurisdiction which carries with it a possible penalty of incarceration in the state penitentiary is a felony in Colorado. *Lacey v. People,* 166 Colo. 152, 442 P.2d 402 (1968). Respondent's conviction for wanton assault in the first degree was punishable by imprisonment for ten years in the Kentucky penitentiary and was therefore a conviction of a felony for the purposes of § 12–36–117(1)(f).

The order of the Board is affirmed.

STERNBERG, C.J., and ROTHENBERG, J., concur.