22CA1243 Peo v Simmons 07-31-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1243
El Paso County District Court No. 20CR1819
Honorable Marcus S. Henson, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Leo Simmons,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Gomez and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 31, 2025

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Tillman Clark, Alternate Defense Counsel, Denver, Colorado, for Defendant-
Appellant

¶ 1    Defendant, Leo Simmons, appeals his jury convictions of four counts of possession of a controlled substance with the intent to distribute, one count of unlawful possession of a controlled substance, and one count of possession of drug paraphernalia. We affirm.

## I.    Background

¶ 2    Police officers observed a parked car that did not have "any front or rear plates" and a silver minivan in a parking lot at Memorial Park in Colorado Springs. After briefly speaking with the driver of the minivan, officers approached Simmons, who was seated in the driver's seat of his parked car. Upon approaching the car, officers noticed a "cigarette box that was laying right underneath the driver's door." The two police officers then instructed Simmons to exit his vehicle. As Simmons exited, he looked down at the cigarette box with "an emphasis on not stepping on the box, [and] kind of walking around it," which prompted the officers to collect the cigarette box from the ground.

¶ 3    Upon further examination, officers observed that the cigarette box had been "recently opened or recently used" and "was pretty much intact." It was not "crumpled" or "ran over" or "soiled by the

1

weather conditions." Inside the box, officers found "some plastic baggies containing a rock-like substance." Police officers then conducted a search of Simmons' car and found "suspected prescription narcotics." During a pat-down search, officers found "baggies" in Simmons' pocket that were "similar to the baggies that had the white substance in the [cigarette box]." In total, the officers recovered 4.62 grams of cocaine, 3.49 grams of oxycodone, and 0.22 grams of amphetamine from Simmons and the area around his car.

¶ 4     A jury convicted Simmons as charged, and the prosecution dismissed the added habitual criminal counts before sentencing. The trial court sentenced him to community corrections.

## II. Substitute Counsel

¶ 5     Simmons contends that his Sixth Amendment right to conflict-free counsel was violated when the trial court declined to assign him a new attorney. He argues that a conflict of interest existed between him and trial counsel because (1) counsel refused to collaterally attack his prior convictions and (2) counsel's scheduled surgery impaired counsel's ability to provide effective representation. We are not persuaded.

## A. Additional Facts

¶ 6    At a pretrial hearing, Simmons told the trial court that he wanted new counsel. He said he wanted a lawyer who would "fight his priors," but that his counsel said he was "appointed on this case and not his priors." The trial court asked Simmons if he wanted a conflict hearing, to which Simmons responded yes.

¶ 7    At the conflict hearing, Simmons explained that he wanted his counsel to "fight his priors" because he believed his prior convictions could be used to enhance his sentence. Trial counsel responded that he had looked into Simmons' prior convictions and discovered that in his most recent conviction, all the issues had been litigated, the Colorado Supreme Court had denied certiorari, and final judgment had entered. Counsel said that he had previously had "at-length discussions with [Simmons] about his criminal history" and how there was nothing the public defender's office could do with his previous convictions considering that his most recent conviction "was affirmed through our highest court" and his cases from 1990, 1996, and 1997 were time barred. The trial court told Simmons that certain strategic decisions were within

3

his counsel's discretion and that collateral attacks of prior convictions were "not always easily litigated" or successful.

¶ 8     The trial court determined that Simmons did not have an actual conflict with counsel but rather a "legal dilemma" regarding his prior convictions. Simmons insisted that his most recent case was "remanded back to the lower courts" but was "never taken care of." The trial court verified that Simmons' most recent conviction was affirmed and never remanded. After continuous requests for substitute counsel and subsequent denials, Simmons proceeded pro se.

¶ 9     Shortly before trial, Simmons moved for appointment of counsel other than the public defender. The court explained that it could only appoint the same attorney and that Simmons was not entitled to court-appointed counsel of his choice. Simmons declined the reappointment of the public defender and told the court that he needed to "get a deposition" from witnesses and asked how to do so. The court said it would not appoint advisory counsel since Simmons had declined the public defender's representation, and it reset the trial date to allow Simmons to have more time to prepare.

¶ 10    On the morning trial was scheduled to begin, Simmons said he needed help with deposing a witness from one of his prior convictions because he did not "want to approach the person without the proper authorities being around." Simmons waived his right to a speedy trial, and the court granted a continuance so he could subpoena the alleged witness.

¶ 11    At the next status conference, the court and the prosecutor expressed concern about Simmons proceeding to trial pro se. Simmons told the court there was "a possibility [that he needed] to rethink it." Simmons asked the court to appoint alternate defense counsel, but the court denied this request and reminded Simmons that his only option was his previous counsel because there was no actual conflict.

¶ 12    At the next hearing, Simmons requested another continuance to seek private counsel and again waived his right to a speedy trial. The trial court reset the trial date and reminded Simmons that if he remained indigent and applied for court-appointed counsel, the court could only appoint previous counsel. Simmons said he understood.

¶ 13    At the next hearing, Simmons appeared without counsel after being unable to secure private counsel, and the court reappointed prior counsel upon his request.

¶ 14    On the first day of trial, counsel told the court that he had a previously scheduled surgery at the end of the week and that he believed Simmons' trial could be finished within the day.  Counsel also said that if the court waited until later in the week to begin the trial, he did not feel comfortable moving forward.

¶ 15    Simmons' trial lasted four days.  Counsel represented Simmons through the trial and to the beginning of jury deliberations.  On the final day of trial, another public defender substituted for trial counsel, due to the scheduled surgery, and received the jury's verdict with Simmons.

          B.    Standard of Review and Applicable Law

¶ 16    The parties dispute preservation.  While acknowledging that Simmons' contention regarding his request for substitute counsel is preserved, the People assert that his argument concerning counsel's scheduled surgery was never raised below and is not preserved.  We agree that any conflict regarding counsel's surgery was not properly preserved and review that portion of Simmons' contention for plain

error.  *See People v. Arzabala*, 2012 COA 99, ¶ 83.  An error is plain if it is obvious and substantial and so undermines the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.  *Hagos v. People*, 2012 CO 63, ¶ 14.

¶ 17    We review a trial court's decision to deny substitute counsel for an abuse of discretion.  *People v. Weeks*, 2015 COA 77, ¶ 101.  A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law.  *See People v. Johnson*, 2021 CO 35, ¶ 16.

¶ 18    Although an indigent criminal defendant has a constitutional right to counsel, they do not have a right to their counsel of choice.  U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *see also People v. Arguello*, 772 P.2d 87, 92 (Colo. 1989).  Moreover, the right to counsel includes the effective assistance of counsel, "and does not necessarily include 'a meaningful attorney-client relationship.'"  *Arguello*, 772 P.2d at 92 (quoting *Morris v. Slappy*, 461 U.S. 1, 14 (1983)).

¶ 19    A conflict of interest exists when the attorney's ability to represent a client is materially limited by the attorney's own interests.  *People v. Stroud*, 2014 COA 58, ¶ 38.  To prove an actual

conflict of interest, a defendant must "identify something that counsel chose to do or not do . . . and must show that the course taken was influenced by that conflict." *Id.* at ¶ 40 (quoting *People v. Kenny*, 30 P.3d 734, 745 (Colo. App. 2000)).

¶ 20    Courts consider four factors in evaluating the constitutional implications of a request for substitute counsel, including (1) the timeliness of the defendant's motion, (2) the adequacy of the court's inquiry, (3) whether the conflict between the defendant and their attorney was so great that it resulted in a total lack of communication or otherwise prevented an adequate defense, and (4) whether the defendant substantially and unreasonably contributed to the conflict with their attorney. *People v. Bergerud*, 223 P.3d 686, 695 (Colo. 2010); *see also People v. Session*, 2020 COA 158, ¶ 15.

¶ 21    As relevant here, on issues of trial strategy, defense counsel is generally the "captain of the ship." *Arko v. People*, 183 P.3d 555, 558 (Colo. 2008) (quoting *Steward v. People*, 498 P.2d 933, 934 (1972)). However, there are several constitutional limitations on defense counsel's ability to direct a trial, including whether to waive a jury trial, whether the defendant will testify, whether the

defendant will plead guilty, and whether the defendant wishes to appeal. *Bergerud*, 223 P.3d at 694-95. Such decisions are for the defendant alone to make. *Id.*

### C. Analysis

¶ 22 Concerning Simmons' preserved conflict argument, we discern no abuse of discretion in the court's ruling for three reasons. We further conclude that there is no plain error flowing from Simmons' unpreserved argument regarding counsel's scheduled surgery.

¶ 23 First, the record shows that counsel stated he had investigated the prior convictions and told the court at the conflict hearing that he saw no irregularities in them. Likewise, the record shows that all of Simmons' prior convictions became final judgments between 1989 and 2015. Thus, collateral attacks as to all of the convictions were time barred under section 16-5-402(1), C.R.S. 2024, absent a showing of excusable neglect or justifiable excuse. Simmons alleged he had newly discovered evidence in the form of a state's witness who had changed her testimony. But he failed to identify the witness, discuss the new statements, identify to which prior conviction(s) the testimony pertained, or explain how such testimony would have resulted in a different outcome. To warrant

suppression of a prior conviction, the accused must make a prima facie showing of some constitutional violation. *People v. Lemons*, 824 P.2d 56, 57 (Colo. App. 1991) (citing *People v. Romero*, 767 P.2d 782 (Colo. App. 1988)). We conclude that Simmons failed to meet this burden.

¶ 24 Second, Simmons has not demonstrated an actual conflict of interest. A lawyer has a conflict of interest when their loyalties are divided. *See* Colo. RPC 1.7, 1.9. An actual conflict of interest is one that is real and substantial, whereas a potential conflict is one that is possible, is nascent, or in all probability will arise. *People v. Kelling*, 151 P.3d 650, 657 (Colo. App. 2006) (citing *People v. Harlan*, 54 P.3d 871, 878 (Colo. 2002)). Neither the existence of animosity between Simmons and counsel nor the pair's asserted strategic disagreements over Simmons' prior convictions constitute an actual conflict of interest requiring the appointment of substitute counsel. *See People v. Garcia*, 64 P.3d 857, 864 (Colo. App. 2002) (finding that the conflict between the defendant and his counsel was a disagreement over strategy and thus did not require appointment of new counsel); *People v. Apodaca*, 998 P.2d 25, 28 (Colo. App. 1999) (counsel's personal disbelief of the defendant's

version of the facts did not require court to appoint substitute counsel based on an alleged conflict of interest).

¶ 25    Third, to the extent Simmons alleges a complete breakdown in communications with counsel, we are not persuaded. Mere communication difficulties do not demonstrate a complete breakdown in communication. *See People v. Thornton*, 251 P.3d 1147, 1151 (Colo. App. 2010) (refusing to find a complete breakdown in communication requiring substitute counsel even though counsel admitted to "a lot of communication breakdowns" because he assured the court he was in contact with the defendant and continued to represent his interests); *People v. Jenkins*, 83 P.3d 1122, 1126 (Colo. App. 2003) (a complete breakdown in communication was not established even where counsel met with the defendant only once in nine months and had not discussed potential witnesses with him or given him copies of discovery). The record shows that Simmons and counsel continued to meet and to argue over whether to collaterally attack the prior convictions, demonstrating that a line of communication existed between the two. *See Bergerud*, 223 P.3d at 693 ("On issues of trial strategy,

defense counsel is 'captain of the ship.'" (quoting *Arko*, 183 P.3d at 558)).

¶ 26 Finally, we discern no prejudice flowing from counsel's scheduled surgery. The record shows that counsel completed the trial before his scheduled surgery and that another public defender appeared with Simmons to take the jury's verdict the following day. To the extent Simmons challenges the effectiveness of counsel due to the pending surgery, this issue is best raised in a postconviction proceeding hearing and not on direct appeal. *See Kelling*, 151 P.3d at 655 ("[B]ecause of the need for a developed factual record, an ineffective assistance of counsel claim should ordinarily be raised in a postconviction proceeding, not on direct appeal."). Under these circumstances, we conclude there was no error, let alone plain error.

### III. Sufficiency of Evidence

¶ 27 Simmons next contends there is insufficient evidence to support his convictions. In particular, he argues there is insufficient evidence that links him to the cigarette box found under his car. We disagree.

A.    Standard of Review and Applicable Law

¶ 28    We review the record de novo to determine whether the evidence before the jury was sufficient in both quantity and quality to sustain a defendant's conviction. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). We must determine "'whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.'" *Id.* (quoting *People v. Bennett*, 515 P.2d 466, 469 (1973)). In making this determination, we must give the prosecution "the benefit of every reasonable inference that might be fairly drawn from the evidence." *People v. McIntier*, 134 P.3d 467, 471 (Colo. App. 2005).

¶ 29    As relevant here, to obtain a conviction for unlawful possession of a controlled substance, the prosecution must prove beyond a reasonable doubt that the defendant knowingly possessed a controlled substance. *See* § 18-18-403.5(1), (2)(a), C.R.S. 2024. "The 'knowing' element applies both to knowledge of possession and to knowledge that the thing possessed is a controlled substance."

13

*People v. Perea*, 126 P.3d 241, 244 (Colo. App. 2005) (citations omitted).  "A person acts 'knowingly' . . . with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstances exists."  § 18-1-501(6), C.R.S. 2024.

¶ 30 To prove possession, the prosecution must show that the "defendant had 'immediate and knowing control over' the drugs." *People v. Poe*, 2012 COA 166, ¶ 15 (quoting *Patton v. People*, 35 P.3d 124, 131 (Colo. 2001)); *see also People v. Villapando*, 984 P.2d 51, 54 (Colo. 1999) (a defendant possesses a controlled substance when (1) the defendant knows of the substance's presence, (2) the substance is immediately accessible, and (3) the defendant exercises dominion or control over the substance).  "A finding of possession may be based on the jury's reasonable inferences from the evidence, including circumstantial evidence." *Poe*, ¶ 15.

¶ 31 "A conviction for unlawful possession of a controlled substance may be predicated on circumstantial evidence.  The controlled substance need not be found on the person of the defendant, as long as it is found in a place under his or her

dominion and control." *People v. Atencio*, 140 P.3d 73, 75 (Colo. App. 2005).

## B. Analysis

¶ 32 Simmons argues on appeal, as he did at trial, that he did not have exclusive possession or control of the drugs, that other people were in or near his car immediately before the police contacted him, and that only circumstantial evidence was produced by the prosecution. In essence, he alleges that his "mere presence" by the drugs is insufficient to sustain his conviction. While we agree that mere presence is insufficient to sustain a conviction without an additional link in the evidence, we conclude the trial evidence, including Simmons' testimony, provided that additional link. *See Poe*, ¶¶ 16-20 (where the defendant's friend testified that she brought drugs to his apartment without his knowledge, evidence that the drugs were found in a one-bedroom apartment rented by the defendant and conflicting testimony that there was no evidence of a houseguest were sufficient to sustain a conviction for possession); *see also Richardson v. People*, 25 P.3d 54, 58 (Colo. 2001).

¶ 33    Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the prosecution, we conclude the following evidence adduced at trial supports Simmons' convictions:

- The cigarette box containing cocaine was recovered below the driver's door of Simmons' car.

- A police officer described Simmons' awareness of the cigarette box as he exited the car, looked to the ground, and made a concerted effort to avoid stepping on it.

- The cigarette box looked recently opened, was unsoiled, was not crushed, and appeared to have been recently placed in its location.

- The unmarked plastic "baggies" recovered from Simmons' pocket were similar to the "baggies" containing drugs found inside the cigarette box. *See People v. Valdez*, 56 P.3d 1148, 1151 (Colo. App. 2002) (finding that the defendant was in possession in part because "[t]he evidence established that the pills beside the bed were wrapped together in cellophane cigarette packaging material similar to the packaging of the codeine tablets discovered in a shirt in [the] defendant's closet").

16

- Prescription pills and a pill splitter were recovered from Simmons' car.

- Approximately $230 in various denominations were recovered from Simmons.

¶ 34    To the extent Simmons contends he was not the "lone suspect" in the parking lot and was therefore not in exclusive control of the cigarette pack, we are not persuaded.  "Possession need not be exclusive, and the substance can be possessed jointly by a person and another without a showing that the person had actual physical control thereof."  *Petty v. People*, 447 P.2d 217, 220 (Colo. 1968); *see also People v. Stark*, 691 P.2d 334, 339 (Colo. 1984).

¶ 35    Accordingly, we conclude that sufficient evidence supports Simmons' convictions.

### IV.    Prior Drug Convictions

¶ 36    Simmons contends that the trial court erred by allowing the prosecution to introduce evidence of his prior felony convictions to impeach his testimony after he introduced an officer's body camera video containing his hearsay statements to police.  We discern no error.

## A.    Additional Facts

¶ 37    During trial, Simmons' counsel introduced body camera footage from one of the arresting officers to impeach the officer's testimony.  The prosecutor reminded counsel that if counsel introduced the entire video (which included Simmons' statements), they would seek to introduce Simmons' prior felony convictions to impeach Simmons' statements.

¶ 38    After the video was played to the jury, the prosecutor filed a motion to introduce Simmons' prior convictions as impeachment evidence under CRE 806.  The court granted the motion and reasoned that although prior drug convictions are highly prejudicial, "the strategic decisions of the parties in the course of how they present the evidence sometimes puts us in a position where it makes it possible to have admitted evidence that is incredibly detrimental."

¶ 39    The parties agreed that the court could take judicial notice of the prior convictions, and the court instructed the jury as follows:

> The Court takes judicial notice of the following
> cases involving People vs. Leo Simmons:

18

In 1989CR155, the defendant was convicted of distribution of an imitation controlled substance, a felony, on July 25, 1989.

In 1990CR3210, the defendant was convicted of distribution of an imitation controlled substance on October 7, 1991.

In 1996CR1971, the defendant was convicted of conspiracy to commit possession of a Schedule II controlled substance, a felony. Conviction occurred on March 12, 1998.

In 1997CR1674, the defendant was convicted of distribution of an imitation controlled substance, a felony. Conviction entering March 12, 1998.

In 2007CR1196, the defendant was convicted of possession of a controlled substance, a felony, with a conviction entering June 12, 2008.

¶ 40 During the defense's case, Simmons testified about the circumstances of the present case and answered questions concerning his prior convictions.

¶ 41 The jury was further instructed that it "may consider testimony or evidence of a previous conviction only in determining the credibility of the defendant as a witness and for no other purpose."

## B. Standard of Review and Applicable Law

¶ 42 Trial courts have considerable discretion in deciding questions concerning the admissibility of evidence. *People v. Ibarra*, 849 P.2d 33, 38 (Colo. 1993); *see also People v. Hardy*, 677 P.2d 429, 431 (Colo. App. 1983) ("Further examination into the details of prior convictions is within the trial court's discretion, provided that such details are relevant pursuant to CRE 401."). We will affirm a trial court's evidentiary rulings absent an abuse of that discretion. *Ibarra*, 849 P.2d at 38.

¶ 43 A prior felony conviction may be used to impeach a witness' statements. § 13-90-101, C.R.S. 2024; *see also* CRE 806. A trial court has no discretion to foreclose the use of a prior felony conviction for purposes of impeachment. *People v. Gallegos*, 950 P.2d 629, 631 (Colo. App. 1997) (citing *Lacey v. People*, 442 P.2d 402, 405 (1968)). While a court has discretion to limit cross-examination concerning the facts of a prior conviction, *People v. Bueno*, 516 P.2d 434, 435 (1973), when a defendant exercises their statutory privilege of testifying, all prior felony convictions may be used to impeach their testimony. *See* § 13-90-101; *see also* CRE 806.

## C.  Analysis

¶ 44  Simmons asks us to modify the Colorado rule allowing impeachment with a prior felony conviction regardless of its age. He urges us to follow the federal rule, as well as the rules in a majority of states, which only permit impeachment with prior convictions that are no more than ten years old, and notes that numerous law review articles that have studied the issue support this time restriction.  He argues, under CRE 403, that the probative value of convictions older than ten years is substantially outweighed by the prejudicial effect of such convictions.

¶ 45  We decline his invitation, however, because it is well settled in Colorado that a defendant may be impeached with a prior felony conviction regardless of its age, that due process is not violated when this occurs, and that a defendant's hearsay testimony may be impeached with prior felony convictions.  *See Gallegos*, 950 P.2d at 631 (evidence of a felony conviction is admissible to impeach the credibility of a witness); *People v. Griffith*, 595 P.2d 231, 232 (Colo. 1979) ("We find no constitutional infirmity in section 13-90-101 . . . ."); *People v. Krueger*, 2012 COA 80, ¶ 63 (finding that when a defendant chooses to introduce their own hearsay, CRE 806

permits that statement's impeachment with the defendant's prior felony convictions). We are bound by our supreme court's precedent and may not alter it. *See People v. Novotny*, 2014 CO 18, ¶ 26 (The supreme court "alone can overrule [its] prior precedents concerning matters of state law."); *see also People v. Gladney*, 250 P.3d 762, 768 (Colo. App. 2010) ("[The Court of Appeals is] bound to follow supreme court precedent.").

¶ 46 We are not persuaded otherwise by Simmons' reliance on *People v. Williams*, 2020 CO 78, ¶ 15, in which the supreme court criticized the admission of prior criminal conduct under CRE 403. The court expressed this criticism in the context of the admission of CRE 404(b) evidence, not in the context of using prior convictions to impeach credibility. Therefore, we find Simmons' reliance on this case misplaced.

¶ 47 Accordingly, we discern no error in the trial court's admission of Simmons' prior convictions to impeach his hearsay statements or his direct testimony.

## V. Cumulative Error

¶ 48 Simmons contends that the introduction of his prior convictions and the cumulative effect of the alleged errors that

22

occurred during his trial denied him his constitutional right to a fair trial. We disagree.

¶ 49 The cumulative error doctrine applies when "the cumulative effect of [multiple] errors and defects substantially affected the fairness of the trial proceedings and the integrity of the fact-finding process." *Howard-Walker v. People*, 2019 CO 69, ¶ 24 (alteration in original) (quoting *People v. Lucero*, 615 P.2d 660, 666 (Colo. 1980)). However, because we have found no errors, we necessarily conclude that the cumulative error doctrine does not apply and thus Simmons was not denied a constitutionally fair trial. *See People v. Villa*, 240 P.3d 343, 359 (Colo. App. 2009) (cumulative error analysis is required only when multiple errors have been identified).

## VI. Disposition

¶ 50 The judgment is affirmed.

JUDGE GOMEZ and JUDGE MEIRINK concur.